## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KEVIN ANDRES CHUQUIANA TOROSHINA,**<br>　　　　　*Petitioner*,<br>　　v.<br>**JOSEPH FREDEN,**<br>　in his official capacity as Deputy Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement;<br>**TAMMY MARICH,**<br>　In her official capacity as Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement;<br>**TODD LYONS,**<br>　In his official capacity as Acting Director, U.S. Immigration and Customs Enforcement,<br>**KRISTI NOEM,**<br>　In her official capacity as Secretary of Homeland Security,<br>　　　　　*Respondent.* | Civil Action No. 25-cv-1228<br><br>Immigration No. 246-630-907<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND INCORPORATED MEMORANDUM OF LAW** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

THE PARTIES ................................................................................................................................2

CUSTODY .......................................................................................................................................3

JURISDICTION & VENUE ............................................................................................................3

    I.   SUBJECT MATTER JURISDICTION ..............................................................................3

    II.  PERSONAL JURISDICTION ............................................................................................3

    III. VENUE ...............................................................................................................................4

LEGAL FRAMEWORK WITH RESPECT TO SPECIAL IMMIGRANT JUVENILES ....4

LEGAL FRAMEWORK WITH RESPECT TO BOND ..............................................................8

FACTS ...........................................................................................................................................13

CLAIMS FOR RELIEF ................................................................................................................14

COUNT 1: VIOLATION OF THE INA .......................................................................................14

COUNT 2: VIOLATION OF DUE PROCESS ...........................................................................14

COUNT 3: VIOLATION OF THE APA ......................................................................................15

PRAYER FOR RELIEF ................................................................................................................16

VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242 .....................................................................................................................18

**PRELIMINARY STATEMENT**

1. Mr. Kevin Andres Chuquiana Toroshina ("Mr. Chuquiana") is an Ecuadoran citizen who entered the United States without inspection on or about February 2023. Upon information and belief, he has no criminal record and was granted Special Immigrant Juvenile Status (SIJS) on or about November 2024. He was detained by Immigration and Customs Enforcement ("ICE") on or about June 8, 2025 and is now being held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York without bond. Upon information and belief, he was denied bond by the Immigration Court based on the court based on the court lacking jurisdiction.[1] His Immigration Court matter is currently pending appeal before the Board of Immigration Appeals ("BIA").

2. DHS and EOIR each have nationwide policies mandating the detention of all persons who entered without admission or parole, regardless of whether that person was apprehended upon arrival. Most recently, on September 5, 2025, in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the Board of Immigration Appeals (BIA) held that all persons who have entered the United States without admission or parole are now subject to mandatory detention under § 1225(b)(2)(A). This legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

3. This systemic misclassification of people arrested inside the United States is in clear violation of the law. These people are generally subject to the detention provisions of 8

---

[1] Counsel has spoken with Immigration Counsel who represents Petitioner in this matter, but has not received the necessary documentation he has requested from them in order to verify the dates and specific actions taken by the Respondents. Thus, the dates and information provided here is based upon information relayed to counsel verbally by Immigration Counsel and by Petitioner's family members.

U.S.C. § 1226, which usually allows for release on bond and conditions during the pendency of immigration proceedings. It has been this way for decades. DHS and DOJ are now misclassifying these people as being subject to 8 U.S.C. § 1225, which does not allow for release on bond. This misclassification is contrary to almost 30 years of settled law and practice, and it is unlawfully premised solely upon the manner in which the person initially entered the country—in some cases, decades ago.

4. Accordingly, Petitioner seeks a writ of habeas corpus. Petitioner requests an order requiring his release unless Respondents provide a bond hearing under § 1226(a) within seven days.

## THE PARTIES

5. Petitioner Kevin Andres Chuquiana Toroshina is detained in the custody of ICE. He is being held at the Buffalo Federal Detention Facility in Batavia, New York. His custody and governmental actions related to his removal are likewise controlled by the Buffalo Field office, which is located within this judicial district.

6. Respondent Joseph Freden is the Buffalo, NY Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement. He is the local ICE official who has authority over the Petitioner. *See Vasquez v. Reno*, 233 F,3d 688, 690 (lst Cir. 2000), cert. denied, 122 S. Ct. 43 (2001). Respondent Freden's office is at 250 Delaware Avenue, Floor 7, Buffalo, NY 14202 and/or at the Buffalo Federal Detention Facility, 4250 Federal Drive, Batavia, NY 14020.

7. Petitioner's custody within this judicial district and the governmental actions related to his potential removal from the district are likewise controlled by Respondents Marich, Lyons and Noem.

## CUSTODY

8. Petitioner is in the physical custody of Respondents and U.S. Immigration and Customs Enforcement ("ICE") at the BFDF. The Deportation Officer responsible for his case is stationed at the Buffalo Federal Detention Facility ("BFDF"). The Petitioner is under the direct care, custody and control of Respondents and their agents.

## JURISDICTION & VENUE

### I. SUBJECT MATTER JURISDICTION

9. This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104 - 208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

10. This Court has jurisdiction under 28 U.S.C, § 2241, Art. I, § 9, el. 2 of the Constitution of the United States (the Suspension Clause) and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, the All Writs Act, 28 U.S.C. § 1651 and the Court's equitable habeas authority.

### II. PERSONAL JURISDICTION

11. This Court has personal jurisdiction over Petitioner's immediate custodian (who is physically within the district).[2]

---

[2] Petitioner asserts this Court has personal jurisdiction over the additional Respondents, however, in the interests of brevity, the Petitioner will brief this if (1) any governmental acts challenged herein are found to relate to those

III.     VENUE

12.     Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S.484, 493-500 (1973), venue lies in the United States District Court for the Western District of New York, the judicial district in which Petitioner is being detained. Petitioner is being detained at the BFDF and his detention falls under the jurisdiction of the ICE Field Office of Buffalo, New York, which encompasses the area where Petitioner is being detained, pursuant to 28 U.S.C. § 1391.

**LEGAL FRAMEWORK WITH RESPECT TO SPECIAL IMMIGRANT JUVENILES**

13.     Congress created SIJS to protect vulnerable immigrant children and provide them a pathway to citizenship. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the INA); Special Immigrant Status, 58 Fed. Reg. 42843, 43844 (Aug. 12, 1993) ("This rule alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future."). Since 1990, Congress has amended the INA multiple times to expand the protections of SIJS, most recently in 2008, through the TVPRA, Pub. L. 110-457, § 235(d), 122 Stat. 5044 (2008).

14.     To be granted SIJS, youths must first "satisfy[] a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 163 (3d Cir. 2018). Specifically, the INA provides that those eligible for SIJS designation, as relevant here, are noncitizen youth who are present in the United States; who have been declared dependent on

---

Respondents (instead of the immediate custodian) and (2) the Government seeks to argue against personal jurisdiction.

a state juvenile court; who cannot be reunified with one or more parents because of abuse, neglect, or abandonment; and for whom it has been determined that it is not in their best interest to return to their country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

15. Crucially, a noncitizen youth is eligible for SIJS only if he is "present in the United States." 8 U.S.C. § 1101(a)(27)(J). The application process involves submitting a Form I-360 Petition to USCIS, along with the predicate state court order and other supporting evidence. See 8 C.F.R. § 204.11(b). USCIS then considers the application and supporting documentation to determine whether to use its statutory "consent function" to approve the petition. *See* 8 U.S.C. § 1101(a)(27)(J)(iii).

16. The core purpose of SIJS is to confer on vulnerable youth the right to seek Lawful Permanent Resident status while remaining in the United States. Although SIJS renders youth eligible to apply for adjustment, they can only do so when a visa is immediately available to them. 8 U.S.C. § 1255(h). However, there is an annual limit on visas available to SIJS beneficiaries. 8 U.S.C. § 1153(b)(4). And since 2016, the number of SIJS beneficiaries has surpassed the supply of available visas for most countries, leaving what has been estimated to be more than 100,000 young people in a backlog, waiting to apply for a green card.

17. Despite the immediate unavailability of visas, waitlisted SIJS beneficiaries are the same vulnerable young people that the SIJS statute was designed to protect. The fact that no visa is currently available because a numerical limit has been reached changes nothing about their eligibility determination by USCIS, or Congress's intent that they be afforded a pathway to LPR status and, eventually, citizenship. These are the same individuals whom state courts have determined cannot safely be reunited with their parent(s) or returned to their home country.

18. Taken together, the structure of the SIJS program—including the requirement that recipients remain in the United States to move forward in the process, the grant of parole for the purpose of adjustment, and the waiver of grounds of inadmissibility and removability—evinces Congress' intent that SIJS recipients remain safely in the United States until they can adjust to become LPRs. And given that they are only "a hair's breadth from being able to adjust their status" and have a "substantial legal relationship" with the United States, these individuals have been recognized as enjoying meaningful constitutional due process rights. *Osorio*, 893 F. 3d at 173-75.

19. Nonetheless, DHS has taken the position that SIJS youth in the visa backlog remain subject to removal, including simply for their lack of lawful immigration status in the United States, while they wait for the ability to apply for a green card. So in March 2022, to address the harms being caused by the SIJS visa backlog, USCIS announced that all young people granted SIJS would also be considered for a discretionary grant of deferred action, meaning that they would be protected from deportation while waiting for a visa to become available. In enacting this policy, USCIS acknowledged that "Congress likely did not envision that SIJ petitioners would have to wait years before a visa became available. . ..." USCIS Policy Alert, PA-2022-10, "Special Immigrant Juvenile Classification and Deferred Action" (March 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf (hereinafter "2022 USCIS Policy Alert").

20. When determining whether a SIJS youth was eligible for deferred action, USCIS assessed, "based on the totality of the evidence, whether [he] warrants a favorable exercise of discretion." 2022 USCIS Policy Alert at n.6; see also USCIS Policy Manual as of April 18, 2025, vol. 6, pt. J, ch. 4, https://web.archive.org/web/20250418205752/https://www.uscis.gov/policy-

manual/volume-6-part-j-chapter-4 ("USCIS weighs all relevant positive and negative factors that apply to the person's case. USCIS may generally grant deferred action if, based on the totality of the facts and circumstances of the case, the positive factors outweigh the negative factors.").

21. Specifically, "[o]ne particularly strong positive factor that weighs heavily in favor of granting deferred action is that the person has an approved [SIJS petition] and will be eligible to apply for adjustment of status as soon as an immigrant visa number becomes available," id., while "[i]f background and security checks indicate that an SIJ-classified individual may be subject to an inadmissibility ground … that cannot be waived and that would make them ineligible for SIJ-based adjustment of status, this would generally be a strong negative factor weighing against the favorable exercise of discretion," as would "serious unresolved criminal charge(s)," Exh. 14, USCIS-ICE Memo at 2.

22. Deferred action is an act of prosecutorial discretion that defers efforts to deport a noncitizen from the United States for a certain period of time. USCIS Policy Manual as of April 18, 2025, vol. 6, pt. J, ch. 4, https://web.archive.org/web/20250418205752/ https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4. In the case of SIJS recipients awaiting visas, USCIS granted deferred action for a period of four years. 2022 USCIS Policy Alert at 2. Individuals granted deferred action are also eligible to apply for employment authorization under 8 C.F.R. § 274a.12(c)(14). Id.

23. In June 2025, USCIS rescinded the SIJS deferred action policy, deciding to no longer consider granting deferred action to SIJS youth waiting to apply for a green card.7 However, this policy change had no impact on SIJS beneficiaries, like Petitioner, who had already received deferred action. See USCIS Policy Alert, PA-2025-07, "Special Immigrant Juvenile Classification and Deferred Action" 2 (June 6, 2025),

Page 7 of 18

https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf (hereinafter "2025 USCIS Policy Alert"). Indeed, USCIS explicitly provided that noncitizens "with current deferred action based on their SIJ classification will generally retain this deferred action . . . until the current validity periods expire." Id.

24. Pursuant to USCIS's internal policies, only USCIS may terminate a SIJS beneficiary's deferred action before it expires, and only if the agency engages in an individualized review and determines, for example, that a favorable exercise of discretion is no longer warranted; the individual's SIJS petition was approved in error and is revoked; or the prior deferred action was granted in error. USCIS Policy Manual, vol. 6, part J, ch. 4, https://www.uscis.gov/policy- manual/volume-6-part-j-chapter-4 ; see also Exh. 14, USCIS-ICE Memo at 2 (confirming that "USCIS has the sole authority to grant and terminate deferred action for noncitizens with SIJ classification" and that "USCIS may terminate deferred action if the SIJ-classified individual was not eligible at the time of the initial grant of deferred action, the SIJ Form I-360 is revoked, or if they are no longer eligible based on new information, including new information about criminal activity that impacts the discretionary determination to grant SIJ deferred action").

**LEGAL FRAMEWORK WITH RESPECT TO BOND**

25. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

26. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an Immigration Judge (IJ). See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§

1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, see 8 U.S.C. § 1226(c).

27. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

28. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, see 8 U.S.C. § 1231(a)–(b).

29. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

30. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226 was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

31. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without admission or parole were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

32. Thus, in the decades that followed, most people who entered without admission or parole and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also

H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

33. On July 8, 2025, ICE, "in coordination with" the Department of Justice, announced a new policy that rejected this well-established understanding of the statutory framework and reversed decades of practice.

34. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without admission or parole shall now be deemed "applicants for admission" under 8 U.S.C. § 1225, and therefore are subject to mandatory detention under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

35. On September 5, 2025, the BIA adopted this same position in *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are considered applicants for admission who are seeking admission and are ineligible for IJ bond hearings.

36. Dozens of federal courts have rejected Respondents' new interpretation of the INA's detention authorities, including every judge sitting in this Court who has made a decision on this issue thus far. See, e.g., *Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV (W.D.N.Y. November 4, 2025); *Da Cunha v. Freden*, 25-CV-06532-MAV, ECF No. 25 (W.D.N.Y. Oct. 20, 2025); *Quituizaca Quituisaca v. Bondi*, 25-cv-6527 (W.D.N.Y. Nov. 12, 2025); *Najeem v. Freden*, 25-cv-6584 (W.D.N.Y. Nov. 12, 2025); *Mendoza v. Bondi*, 25-cv-954 (W.D.N.Y. Nov. 12, 2025); *Martinez v. Bondi*, 25-cv-6508 (W.D.N.Y. Nov. 12, 2025); Rodriguez *Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK,

2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Jose J.O.E. v. Bondi, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); see also, e.g., *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3

(D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

37. Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

38. Subsection 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

39. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without admission or parole. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)).

40. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

41. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine

whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

42. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who has already entered and was residing in the United States at the time he was apprehended.

## FACTS

43. Mr. Kevin Andres Chuquiana Toroshina ("Mr. Chuquiana") is an Ecuadoran citizen who entered the United States without inspection on or about February 2023. Upon information and belief, he has no criminal record and was granted Special Immigrant Juvenile Status (SIJS) on or about November 2024. He was detained by Immigration and Customs Enforcement ("ICE") on or about June 8, 2025 and is now being held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York without bond. Upon information and belief, he was denied bond by the Immigration Court based on the court based on the court lacking jurisdiction.[3] His Immigration Court matter is currently pending appeal before the Board of Immigration Appeals ("BIA").

44. Upon information and belief, ICE has issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions.

45. Without relief from this Court, Petitioner faces the prospect of months, or even years, in immigration custody.

---

[3] Counsel has spoken with Immigration Counsel who represents Petitioner in this matter, but has not received the necessary documentation he has requested from them in order to verify the dates and specific actions taken by the Respondents. Thus, the dates and information provided here is based upon information relayed to counsel verbally by Immigration Counsel and by Petitioner's family members.

Page 13 of 18

## CLAIMS FOR RELIEF

### COUNT 1: VIOLATION OF THE INA

46. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein, and does so for all additional counts.

47. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

48. The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

### COUNT 2: VIOLATION OF DUE PROCESS

49. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein, and does so for all additional counts.

50. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

51. Petitioner has a fundamental interest in liberty and being free from official restraint.

52. The government's arbitrary detention of Petitioner, who has a grant of SIJS status and may have a grant of deferred action, violates his right to due process.

53. The government's detention of Petitioner without a bond redetermination hearing to determine whether they are a flight risk or danger to others violates the right to due process.

## COUNT 3: VIOLATION OF THE APA

54. Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein, and does so for all additional counts.

55. Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing court "shall... hold unlawful and set aside agency action, findings, and conclusions found to be-(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

56. Respondents' unilateral decision to arrest and detain Petitioner even though he has an approved SIJS petition and likely has deferred action was not in accordance with the Constitution, the INA, and its implementing regulations, as explained above. It should therefore be set aside under the APA as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" 5 U.S.C. §706(2)(A) and "in excess of statutory jurisdiction, authority or limitations, or short of statutory right," 5 U.S.C. §706(2)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that the Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Enjoin the Respondents from transferring Petitioner away from the jurisdiction of this District pending these proceedings;

(3) Declare that Petitioner's arrest and detention violates the Due Process Clause of the Fifth Amendment; the Fourth Amendment; and the INA and implementing regulations;

(4) Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody without restraints on his liberty beyond those that existed prior to his unlawful detention;

(5) Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

(6) Order that Respondents cannot re-detain Petitioner without a pre-deprivation hearing before this Court where the government bears the burden of justifying re-detention by clear and convincing evidence;

(7) Order that Respondents cannot terminate Petitioner's deferred action based on his detention to pursue removal for lack of lawful immigration status;

(8) Order that Respondents cannot terminate Petitioner's deferred action without first providing reasonable notice of intent to terminate, a reasoned explanation, and an opportunity to submit arguments and evidence in response;

(9) Issue a writ of habeas corpus clarifying that the statutory basis for Petitioner's detention is 8 U.S.C. § 1226(a) and that 8 U.S.C. § 1225(b)(2)(A) does not apply to Petitioner;

(10) In the alternative, Issue a writ of habeas corpus requiring that Respondents release Petitioner unless Respondents provides Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within 14 days;

(11) Declare ICE's July 8 policy and the BIA's *Matter of Yajure Hurtado* decisions unlawful;

(12) Award Petitioners attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(13) Fashion such additional relief as is necessary and appropriate, including declaratory relief or other interim relief necessary to vindicate Petitioners' rights under U.S. and international law.

Dated: November 20, 2025            /s/ Matthew K. Borowski
                                    _____
                                    Matthew K. Borowski
                                    *Attorney for Petitioner*
                                    4343 Union Road,
                                    Buffalo NY 14225
                                    E-mail: matthew@borowskilaw.com
                                    Tel: 716-330-1503

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have discussed with the Petitioner's immigration counsel and family the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated:  November 20, 2025               /s/ Matthew K. Borowski
                                        _____
                                        Matthew K. Borowski
                                        *Attorney for Petitioner*
                                        4343 Union Road,
                                        Buffalo NY 14225
                                        E-mail: matthew@borowskilaw.com
                                        Tel: 716-330-1503